IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL J. MONTALBANO, JR., | ) |
| Plaintiff, | ) Civil Action No. 2:12-cv-01471 |
| v. | ) |
| CAVALRY PORTFOLIO SERVICES, LLC and GORDON & WEINBERG, P.C., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

**Mark R. Hornak, United States District Judge**

The issue in this case is whether the Plaintiff must assert his claims against the Defendant in arbitration rather than in court. This Court holds that he must.

On September 20, 2012, Plaintiff Carl Montalbano filed this case in the Court of Common Pleas of Allegheny County, claiming that Defendant Cavalry Portfolio Services, LLC ("Cavalry")[1] engaged in conduct in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Pennsylvania Dragonetti Act, 51 Pa. C.S.A. § 8351. ECF No. 1. Defendant Cavalry removed the case to this Court on October 11, 2012, *id.*, and filed a Motion to Compel Arbitration and Stay Proceedings including Discovery, or in the alternative Transfer Venue ("Motion"), ECF No. 3. On December 20, 2012, the Magistrate Judge issued a Report & Recommendation that the Motion be denied. ECF No. 8 ("R&R"). Defendant objected

---

[1] It appears that in some of the previous filings in this case, Defendant has been also referred to as "Calvary" or "Calgary." Based on the docket caption, as well as Defendant's spelling of its name in its own briefing and supporting documentation, it appears that Defendant's proper name is "Cavalry."

to the R&R, ECF No. 11, to which Plaintiff responded, ECF No. 12 ("Response"), and Defendant replied, ECF No. 13. For the reasons that follow, Defendant's Motion is granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Magistrate Judge engaged in a thorough and exhaustive review of the record facts in this case and the primary arguments advanced by the parties. They are relayed from the R&R as follows:

> Plaintiff . . . obtained a credit card from Bank of America/FIA Credit Services, N.A. ("BOA/ FIA") (the "Credit Card") in August 2007. The Credit Card was subject to a Credit Card Agreement. (ECF No. 3, ¶¶ 8-14). . . . At some point thereafter Plaintiff failed to make payments on the BOA/FIA Credit Card and the Credit Card account went into default. (ECF No. 3, ¶ 5).
>
> On December 15, 2009, BOA/FIA entered into a Loan Sale Agreement with Calvary [sic] SPV I, LLC ("Calvary SPV") for the sale of certain credit card and credit line accounts, including Plaintiff's Credit Card account. (ECF No. 3, ¶¶ 18-19). On December 18, 2009, BOA/FIA executed a Bill of Sale and Assignment of Loan to Calvary SPV. (ECF No. 3, ¶ 19). On the same date, Calvary SPV assigned its rights in the Loan Sale Agent to Defendant Calvary. (ECF No. 3, ¶ 20). *As a result of these transactions, Defendant Calvary became the owner of Plaintiff's Credit Card account.*
>
> Defendant Calvary is a Delaware company that engages in the business of debt collection. . . . . On September 23, 2011, Defendant G&W[2] filed a lawsuit on behalf of Defendant Calvary against Plaintiff in the Arbitration Division of the Court of Common Pleas of Allegheny County. . . .
>
> In the Instant Motion presently before this Court, Defendant Calvary asserts that the Card Agreement contained an Arbitration and Litigation Provision which required that Plaintiff's claims be addressed by binding arbitration. The Arbitration Provision provides as follows:
>> *"Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), shall, upon election by either you or us, be resolved by binding arbitration. The arbitrator shall resolve any Claims, including the applicability of this Arbitration and Litigation Section or the validity of the entire Agreement or any prior Agreement, except for any Claim*

---

[2] The co-defendant in this case at the time the R&R was issued, Gordon & Weinberg, P.C. ("G&W"), has now been voluntarily dismissed by the Plaintiff. ECF No. 7.

> *challenging the validity of the Class Action Waiver, which shall be decided by a court."*

(ECF No. 3, ¶ 10)[; ECF No. 3-1 at 45 (italics added)]. Defendant Calvary contends that the Arbitration Provision also sets forth the selection process for the arbitration including the forum where the arbitration will take place.

Defendant Calvary argues that the Arbitration Provision extends to Calvary as a successor purchaser.

> *"This Arbitration and Litigation Section applies to all Claims now in existence or that may arise in the future. This Arbitration and Litigation Section shall survive the termination of your account with us as well as any voluntary payment of the debts in full by you, any bankruptcy by you or sale of the debt by us.*
>
> *For the purposes of this Arbitration and Litigation Section,* **"we" and "us" means FIA Card Services, NA,** *its [. . .] assigns, and any purchaser of your account, parent, subsidiaries, affiliates, licensees, predecessors, successors, and all of their officers, directors, employees, agents and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the account (including but not limited to credit bureaus, merchants that accept any credit device issued under the account, rewards or enrollment services, credit insurance companies,* **debt collectors** *and all of their officers, directors, employees and agents)* **if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us."*

(ECF No. 3, ¶ 12) (Emphasis supplied)[; ECF No. 3-1 at 46-47 (italics added)].

Defendant Calvary further argues that in the event that the Plaintiff rejects the arbitration, then "any litigation brought by the [Plaintiff] against [Cavalry] regarding the account or this [Card] Agreement shall be brought in a Court in the State of Delaware." (ECF No. 3, ¶ 13).

Plaintiff, in his Brief in Opposition to Defendant's Motion to Compel Arbitration, correctly points out that Defendant Calvary is not a signatory to the Card Agreement at issue. (ECF No. 5, at p. 2). As a result, Plaintiff argues that Defendant Calvary may not compel arbitration of Plaintiff's claims because Defendant Calvary is a "debt collector" within the meaning of the FDCPA, and the Complaint does not name Defendant Calvary as a co-defendant with BOA/FIA such that it falls within the additional definition of "us" in the arbitration clause cited above. As a result, Plaintiff argues that Defendant Calvary may not compel arbitration of Plaintiff's claims.

R&R at 1-4. (emphasis added).

The R&R agreed with Plaintiff that because Cavalry was a "debt collector" within the meaning of the second sentence of the Arbitration Clause,[3] it could not also be considered to fall under the definition of "us" in the first sentence of the Arbitration Clause. R&R at 4-6. Therefore, the Magistrate Judge recommended that because BOA/FIA was not listed as a co-defendant as the second sentence requires, the arbitration clause does not apply and the Motion to Compel Arbitration should be denied. R&R at 6.

## II. DISCUSSION

Defendant objects to the R&R's application of the Arbitration Clause, arguing that it erred in "failing to designate Cavalry as an assignee entitled to enforce the rights and remedies it acquired by assignment." ECF No. 11 at 10. This Court reviews the findings of fact and conclusions of law in a Magistrate Judge's R&R that are subject to timely objection *de novo*. 28 U.S.C. § 636(b)(1)(C); W.D. Pa. Civ. R. 72(D)(2).

The Arbitration Clause has two sentences that define the "'we' and 'us'" to whom the Arbitration Provision applies. The first sentence states that it applies to "FIA Card Services, NA, its . . . assigns, and any purchaser of your account, parent, subsidiaries, affiliates, licensees, predecessors, successors, and all of their officers, directors, employees, agents and assigns or any and all of them." ECF No. 3-1 at 47. The second sentence states that "Additionally, 'we' or 'us' shall mean any third party providing benefits, services, or products in connection with the account (including but not limited to . . . debt collectors . . . ) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us." *Id.* Therefore, an entity can invoke the Arbitration Clause by either showing that it fits within "'we' and 'us'" in the first sentence, or that it fits within the second sentence *and* that such "third party" is named as a co-

---

[3] For ease of reference, this Memorandum Opinion will refer to the paragraph in the Arbitration Provision at issue beginning with the phrase "For purposes of this Arbitration and Litigation Section . . ." as the "Arbitration Clause."

4

defendant in a suit against "us." Here, the Court must consider whether Cavalry fits into the first sentence, the second sentence, or both.[4]

### A. Cavalry was a valid assignee of BOA/FIA

The R&R found that Cavalry became the "owner" of Plaintiff's credit account," because BOA/FIA sold it to Cavalry SPV by way of the Bill of Sale and Assignment of Loan, who "assigned its rights to" Cavalry. R&R at 2. While Plaintiff now disputes (unsuccessfully) the *validity* of the assignment,[5] the parties did not dispute at any point in time, and so the Magistrate

---

[4] Neither party disputes that a court, rather than an arbitrator, is the proper entity to decide the question of arbitrability, and this Court agrees that it is its obligation to decide the "gateway dispute" of whether a party is bound by an agreement to arbitrate. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

[5] In his Response to Defendant's Objections to the R&R filed on January 24, 2013, Mr. Montalbano for the first time (1) disputes "[w]hether there is a valid assignment" from BOA/FIA to Cavalry, and (2) argues that "there is no evidence that Plaintiff ever received the credit card agreement containing the arbitration clause," and asks for a hearing on those factual issues. ECF No. 12 at 3-4. Plaintiff never raised these issues in his response to Defendant's original Motion to Compel. *See* ECF No. 5. The R&R, dated December 20, 2012, found both that there was a valid assignment and that Plaintiff was subject to the Card Agreement. R&R at 2. Plaintiff never filed an objection to the R&R, which was due fourteen days after its entry on December 20, 2012. *See* R&R at 7 (citing 28 U.S.C. § 636(b)(1); LCvR 72(D)(2)). An objection must "specifically identify the portions of the proposed recommendations" objected to. LCvR 72(D)(2). While this Court must conduct a *de novo* review of facts and conclusions that are objected to, a failure to timely object to an R&R "may result in forfeiture of *de novo* review." *Nara v. Frank*, 488 F.3d 187, 194 (3d Cir. 2007); *Brightwell v. Lehman*, 637 F.3d 187, 193 n.4 (3d Cir. 2011); 28 U.S.C. § 636(b)(1)(C). Indeed, Magistrate Judges are now instructed (and the Magistrate Judge correctly did) notify parties that their failure to object to an R&R "*will* waive the right to appeal." R&R at 7 (citing *Brightwell*, 637 F.3d at 193 n.4) (emphasis added). District courts in this circuit have held more specifically that the standard of review they are to apply in such a scenario is plain error. *See Oldrati v. Apfel*, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998); *Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006), *aff'd*, 276 F. App'x 125 (3d Cir. 2008); *see also Nara*, 488 F.3d at 194 (Court of Appeals reviews R&R under plain error where party failed to timely object).
   The Magistrate Judge did not commit error, let alone plain error, in concluding that there was a valid assignment of interests from BOA/FIA to Cavalry SPV to Cavalry. Defendant has provided copies documenting those assignments, ECF No. 3-1 at 104-106, and an affidavit averring their validity, *id.* at 2, and Plaintiff has offered no factually grounded attack on their authenticity. The Court also concludes that the Magistrate Judge did not commit error at all in concluding that Plaintiff was subject to the Card Agreement. Although Defendant did not offer a signed copy of the Card Agreement, it submitted a printed copy of the Agreement in Plaintiff's name, *id.* at 6, along with credit card statements in Plaintiff's name, *id.* at 55-60. In his Response brief, Plaintiff does not state that he never actually received the Card Agreement, and thus is not bound by it; he merely says that Defendant has not proved that he did. ECF No. 12 at 4. Nor has Plaintiff made any such allegation by way of affidavit. Plaintiff does not dispute that he possessed or used the credit card at issue, and thus there is no independent reason to believe that he did not receive or assent to the Card Agreement (which was the original and only Agreement associated with his card). *See, e.g., Stinger v. Chase Bank, USA, NA*, 265 F. App'x 224, 227 (5th Cir. 2008) (plaintiff's "unsupported statement" that he did not receive credit card agreement insufficient to raise issue of fact).
   In short, Plaintiff's unsubstantiated suggestion that he hypothetically might not have received the Card Agreement for a credit card he possessed and used, made well after the passing of the objection period, strikes this Court as baseless, and the Magistrate Judge acted far above any standard of plain error in finding he was so bound. Therefore, the Court adopts the R&R's findings (1) that Cavalry was a valid assignee of rights in Mr. Montalbano's

Judge did not consider, the *completeness* of the assignment – whether Cavalry SPV assigned to Cavalry all, or just some, of the rights to Mr. Montalbano's account, and the effect of such status on the Arbitration Clause.

Parties, by way of assignment, may confer their proprietary interests in whole or in part to others, assignees who then "stand in the shoes" of the assignors.

> It is basic contract law that only a party to a contract can be bound by that contract. *See Comcast Spectacor, L.P. v. Chubb & Son, Inc.*, No. 05–1507, 2006 WL 2302686 at *19 (E.D.Pa. Aug.8, 2006). However, a party to a contract can transfer *all or some* of his rights and duties established by the contract to another person via an assignment of those rights. *See Crawford Central School District v. Commonwealth of Pa.*, 888 A.2d 616, 619 (Pa. 2005). The assignee receiving the rights succeeds to no greater rights than those possessed by the assignor. *Id.* at 619–20. Conversely, "an assignee's rights . . . are not inferior to those of the assignor." *Id.* at 620. In other words, under Pennsylvania law, an assignee "stands in the shoes of the assignor" with regards to the right or duty assigned. *Id.*

*Sweiger v. Calvary Portfolio Servs., LLC*, Civ. A. No. 11-1631, 2012 WL 1940678, at *3 (W.D. Pa. May 29, 2012) (emphasis added).[6]

Here, there is no doubt that BOA/FIA transferred all of its rights in their entirety in Mr. Montalbano's account to Cavalry SPV. *See* Bill of Sale & Assignment of Loans, ECF No. 3-1 at 104 (BOA/FIA "absolutely sells, transfers, assigns . . . and conveys to Cavalry SPV . . . all of Assignor's right, title and interest in and to each of the loans identified"). It appears, however,

---

credit card account, and (2) that Mr. Montalbano is bound by the Card Agreement. The extent to which the Magistrate Judge was correct in characterizing Cavalry as "the owner of Plaintiff's Credit Card account," R&R at 2, is further examined below. In light of that adoption, because there is no genuine issue of fact as to the formation of the Agreement, the Court rejects Plaintiff's request, also first raised in his Response, for a jury trial on the issue of enforceability of the arbitration agreement. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980).

[6] The Assignment from Cavalry SPV to Cavalry states that it "shall be governed by the laws of the State of New York without regard to the conflict-of-laws rules thereof." ECF No. 3-1 at 106. New York law regarding assignments is substantially the same as Pennsylvania's, agreeing that an assignee steps into the shoes of the assignor. *See, e.g., Citibank, N.A. v. Tele/Res., Inc.*, 724 F.2d 266, 269 (2d Cir. 1983). Additionally, the Arbitration Provision in the Card Agreement states that it shall be governed by the laws of the State of Delaware, ECF No. 3-1 at 44, which is also in agreement with New York and Pennsylvania on assignees' status. *See, e.g., Madison Fund, Inc. v. Midland Glass Co., Inc.*, 394 CIV.A. 1974, 1980 WL 332958, at *2 (Del. Super. Aug. 11, 1980); *Resort Point Custom Homes, LLC v. Tait*, CIV.A.S08C-04-020, 2010 WL 1443274, at *2 (Del. Super. Apr. 7, 2010) (citing 6 Am. Jur. 2d Assignments § 102)); *Cont'l Guar. Corp. v. People's Bus Line*, 117 A. 275, 279 (Del. Super. Ct. 1922).

that Cavalry SPV did not transfer all of its rights in the subject accounts (including Mr. Montalbano's) to Calvary, but only the right to seek judicial enforcement and collection of the debts. *See* Assignment, ECF No. 3-1 at 106:

> Cavalry SPV . . . hereby transfers and assigns to Cavalry . . . all of Assignor's rights to pursue collection and judicial enforcement of obligations under each of the Assignor's accounts . . . including engagement of attorneys and commencement of legal actions reasonably required to enforce said obligations, for the consideration of Assignor's covenants in the Servicing and Management Agreement . . . .

The Supreme Court considered the legal status of an "assignee for collection" in the context of Article III standing in *Sprint Comm'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). In that case, payphone operators had assigned multiple small claims to billing and collection firms called "aggregators." *Id.* at 271. Employing similar language to that here, the operators made assignments "for purposes of collection all rights, title and interests of the payphone operator in the payphone operator's claims, demands, or causes of action." *Id.* (internal marks omitted). The Court held that the aggregators had Article III standing to bring suits for collection. Because "the payphone operators assigned their claims to the aggregators lock, stock, and barrel," *id.* at 286, the aggregators "assert[ed] what are, due to that transfer, legal rights of their own. The aggregators, in other words, are asserting first-party, not third-party, rights," *id.* at 290. The Court also distinguished an ordinary contract for legal services to collect for a creditor on the one hand with an assignment for purposes of collection on the other: "[t]he latter confers a property right (which creditors might attach); the former does not." *Id.* at 289. The Court reasoned that it was irrelevant that the assignee, after it acquired a legal victory, might pay the compensation gained back to the assignor, positing, "What does it matter what the aggregators do with the money afterward?" *Id.* at 288.

7

The *Sprint* case makes it plain that assignees-for-collection are not merely agents acting on behalf of their assignors, but are asserting their own proprietary interests and in their own right.[7] In this case, therefore, Cavalry was the valid recipient of Cavalry SPV's assignment of its interest in seeking collection from Mr. Montalbano's account, allowing Cavalry to bring claims for collection against individuals in its own right. In light of this conclusion, while Cavalry might not be considered the "owner" of the account, *see* R&R at 2, because Cavalry SPV still retains its other proprietary interests in the account (to the extent it has not assigned them to other entities), even so, Cavalry is nonetheless the "owner" of a valid property interest in it.

Here, because Cavalry SPV I actually bought Mr. Montalbano's account "lock, stock, and barrel" and then assigned its rights in collection to Cavalry, Cavalry became a valid assignee of a real interest in the account. The result of this status is twofold. First, it renders Cavalry an "assign" or an assign of an assign within the meaning of the first sentence of the Arbitration Clause, which explicitly contemplates multiple layers of assignment. *See* ECF No. 3-1 at 47 ("For the purposes of this Arbitration and Litigation Section, 'we' and 'us' means FIA Card Services, NA, its . . . assigns, and any purchaser of your account, and all of their . . . assigns or any and all of them").[8] Second, it means that as a valid assignee of an account for collection purposes, Cavalry is entitled to the rights of Cavalry SPV as well as of the original assignor, BOA/FIA, when it comes to the collection of debts and judicial enforcement thereof, including

---

[7] New York law appears to agree with *Sprint* on this point. *See, e.g., Seldon v. Flomenhaft*, 831 N.Y.S.2d 362 (N.Y. Civ. Ct. 2006) (citing *Spencer v. Standard Chems. & Metals Corp.*, 237 N.Y. 479 (1924)); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997) (same).

[8] The easy case is one that involves a complete wall-to-wall assignment. Here, the less-than-total assignment nonetheless "matches" the scope of the arbitration clause, i.e. collection of outstanding debt. It is possible that with a different type of assignment, or cause of action, or implicated contractual language, an assignee might not enjoy *all* of the rights of BOA/FIA as enumerated in the Card Agreement. Here, however, by way of the Assignment, Cavalry is an assign for the purpose contemplated by the Arbitration Clause, namely, collection of the debts owed. Therefore, the Court has no difficulty concluding that here, the proprietary interest conferred on Cavalry by assignment renders it an "assign" within the meaning of the Arbitration Clause's first sentence.

the ability to enforce the Arbitration Clause as a "we" or "us" under the Clause's first sentence. In other words, Cavalry necessarily enjoys that status as it has stepped into the shoes of Cavalry SPV and BOA/FIA for these purposes, and is an assignee with rights not inferior to those of its assignors in those regards. *See Sweiger*, 2012 WL 1940678, at *3.

### B. Even though Cavalry may have been a "debt collector," this does not alter its status under the Arbitration Clause

The R&R relied primarily on two opinions in concluding that because Cavalry could be characterized as a "debt collector" within the meaning of the second sentence of the Arbitration Clause, it could not be considered "we" or "us" within the meaning of that clause's first sentence. *See Bontempo v. Wolpoff & Abramson, LLP.*, Civ. A. No. 06-745, 2006 WL 3040905 (W.D. Pa. Oct. 24, 2006); *Karnette v. Wolpoff & Abramson, L.L.P.*, 444 F. Supp. 2d 640 (E.D. Va. 2006). The Court believes that both of these cases are distinguishable from the one at hand.

*Bontempo* implicated an arbitration clause nearly identical to the one here. *See* 2006 WL 3040905, at *4 n.11. The plaintiff had obtained consumer credit from MNBA America Bank, N.A. ("MNBA"). MNBA then "retained [the defendant] W&A as a law firm to pursue recovery of the outstanding balance due on plaintiff Monteleone's credit card account." *Id.* at *2; *see also id.* at *3 ("W&A, *on behalf of MBNA*, filed suit in the Court of Common Pleas") (emphasis added). The court held that W&A was a "debt collector" within the meaning of the second sentence, and therefore held that because the bank was not sued as a co-defendant, the arbitration clause was inapplicable. *Id.* at *6.

The *Bontempo* court considered whether W&A was also an "agent" (of an owner, purchaser, or assign of the account) within the meaning of the first sentence of the arbitration clause at issue there, and whether it could therefore compel arbitration under that status. The court cited the rule that "[w]here a contract specifies different rights to different specifically

9

mentioned entities, the contract must be interpreted to require that specificity. Otherwise, the use of two different terms would be mere surplusage." *Id.* at *6 (internal citations and quotations omitted). It noted that:

> [w]hile a debt collector may function as an agent or the specific purpose of collecting debts, time-honored principles of contract construction require a thing specifically named to be specifically treated. Accordingly, W&A is to be treated as a debt collector rather than as a general agent because *W&A functioned only to serve MBNA* for the purpose of collecting overdue credit card debts.

*Id.* (emphasis added). *Karnette*, upon which the *Bontempo* court relied, implicated apparently the same arbitration clause, and the same status of debt collector, as *Botempo*. *See* F. Supp. 2d at 656 ("W&A functioned only to serve MBNA for the purpose of collecting overdue credit card debts.").

The facts of those cases are in contrast to those here, where Cavalry does not in any way act to serve BOA/FIA as its "agent" (thus making the interpretative choice one between a general "agent" of an assignee and a specific "debt collector"), but rather acts in its own right as the valid holder of an assigned interest in the account. Nor does it act as Cavalry SPV's agent for the reasons explained by the Supreme Court in *Sprint*: just because Cavalry might pay to Cavalry SPV the proceeds gained by way of another contractual obligation, Cavalry still has its own proprietary interest that it asserts in its own right. *See* 554 U.S. at 289. The functions performed by the defendants in *Botempo* and *Karnette* are illustrative of this point. W&A was the law firm that performed the debt collection services for the banks in those cases. Here, it was G&W that performed those services by seeking payment of Mr. Montalbano's debt *on behalf of Cavalry* "as assignee" of Cavalry SPV I and BOA/FIA. Compl., ECF No. 1-1 at 20.

While *Botempo* and *Karnette* appear to stand for the proposition that when a debt collector acts as an "agent" of the account owner, it cannot rely on that status to avoid the more

10

specific Arbitration Clause language requiring "debt collectors" to be sued alongside the account owner, those cases do not support the conclusion that where, as here, the entity that is seeking to collect payment of the debt is *also* the owner (by assignment or otherwise) of an interest in the debt itself (and not only an agent), that entity may be treated *only* as a "debt collector."[9]

This conclusion is not contrary to the rules of contractual interpretation that consider specific language to trump general language. This is because a reading of the rest of the second sentence of Arbitration Clause demonstrates that it contemplates that debt collectors will be "third part[ies] providing benefits [or] services" to be sued alongside "us," the account owner.[10] In other words, a debt collector is a "third party" *when it acts to serve* the account owner. But as discussed above, when the debt collector is the owner of an interest in the debt, the owner/collector is no longer a "third party" providing "services" to another, but rather acts as a first party in furtherance of its own proprietary interest, even if it happens to be ultimately paying the money over to another entity. *See Sprint*, 554 U.S. at 286-290.

In a case more factually similar to this than *Botempo* and *Karnette*, where the defendant debt collector also was an assign of the original owner, another district court concluded that the debt buyer, "as [the bank's] assign, is not a 'third party' providing 'services' in connection with the account. Rather, [Defendant] has become the *de facto* owner of the account." *Hoefs v. CACV of Colorado, LLC*, 365 F. Supp. 2d 69, 75 (D. Mass. 2005).[11] Accordingly, the court granted the

---

[9] The argument advanced by the Plaintiff here, and to a degree, applied by the courts in *Karnette* and *Bontempo* appears to this Court to not give full force to the transitional term "additionally" with which the second sentence of the Arbitration clause begins, and which more acutely focuses the distinction between the application of the Arbitration Clause as to those entities described in each of those sentences.

[10] *See* ECF No. 3-1 at 47 ("Additionally, 'we' or 'us' shall mean any third party providing benefits, services, or products in connection with the account (including but not limited to . . . debt collectors . . . ) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.").

[11] The language of the arbitration clause in *Hoefs* was exactly the same as that in *Botempo* and *Karnette* (all naming MBNA), and is all but identical to the clause in this case (naming BOA/FIA). *See* 365 F. Supp. 2d at 74.

Defendant's motion to compel arbitration. *Id.* at 76; *accord Webb v. MBNA Am. Bank*, 1:04-CV-00107, 2006 WL 618186 (E.D. Ark. Mar. 10, 2006). While in *Hoefs*, there appears to have been a complete assignment of the debt that took place directly from the bank to the defendant, 365 F. Supp. 2d at 75, rather than a partial transfer involving an intermediary, for the reasons described above, both in *Hoefs* and here the defendant falls into the category of "assign" rather than "agent," asserting its own, rather than another's, rights. Therefore, the court's holding in *Hoefs* is factually on point, and this Court finds its reasoning persuasive.

Because Cavalry is the assignee for collection purposes of Mr. Montalbano's credit account by way of a valid assignment from its original owner, BOA/FIA, through Cavalry SPV, Cavalry is entitled to enforce the Arbitration Clause as an assignee and as if it were the original owner of the account, and the Motion to Compel Arbitration is granted.

### C. Cavalry's Motion to Transfer Venue

In its Motion to Compel, Cavalry requested "[in] the alternative" to its request to compel arbitration, that the Court transfer venue to the United States District Court for the District of Delaware, citing to a clause in the Arbitration Provision that states that if Plaintiff rejected arbitration, any litigation be brought in Delaware alone. ECF No. 3 at ¶¶ 2, 13. Because Defendant's motion to compel arbitration will be granted, the Court need not consider the issue of judicial venue.

An appropriate order will follow.

_____
Mark R. Hornak
United States District Judge

Dated: February 15, 2013

cc:   All counsel of record